IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Craig A. George, #234347, ) | |
| ) | Civil Action No. 6:07-0574-RBH-WMC |
| Plaintiff, ) | |
| ) | |
| vs. ) | **REPORT OF MAGISTRATE JUDGE** |
| ) | |
| Anthony J. Padula, Warden of Lee ) | |
| Correctional Institution; M. Bell, ) | |
| Associate Warden; Kay Hughes, ) | |
| Captain; NFN Davis, Sergeant; NFN ) | |
| Bradley, Officer; and NFN Johnson, ) | |
| Correctional Officer, ) | |
| ) | |
| Defendants. ) | |
| ) | |

This matter is before the court on the plaintiff's motion for default and the defendants' motion for summary judgment. In his complaint, the plaintiff, a state court prisoner proceeding *pro se,* seeks relief pursuant to Title 42, United States Code, Section 1983, alleging that his constitutional rights were violated.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the District Court.

The plaintiff names as defendants Anthony J. Padula, Warden of Lee Correctional Institution ("Lee"); Margaret Bell, Associate Warden of Lee; Major Ann Hughes, Supervisor of the Special Management Unit ("SMU") at Lee; and Sgt. Davis, Officer Alexander Bradley and Officer Johnson, all security officers in the SMU at Lee.

**FACTS PRESENTED**

The plaintiff claims that on February 22, 2005, he was assisting defendant Bradley as a food worker in the SMU at Lee. The plaintiff claims that he was assisting defendant Bradley contrary to agency policy, as he alleges that he was not allowed on the SMU wing unless authorized by an "executive." The plaintiff alleges that as he and defendant Bradley were collecting used food trays from the SMU inmates, the two approached the cell of an inmate to collect the food tray. It is the plaintiff's contention that defendant Bradley unlocked the cell door, but not the food flap, and then left the area. The plaintiff alleges that when he attempted to receive the tray, the inmate attacked him with a weapon. The plaintiff states that he was able to free himself from the attacker and run to the exit. He alleges that defendant Bradley then observed the inmate attempting to "come out of the cell a second time" and that defendant Bradley called for security assistance. The plaintiff claims that when he was out of the security tier, he went to the unit sallyport and was met by defendant Davis, who asked if he was all right. He alleges that defendant Hughes sat him in a wheelchair and he was escorted to the medical unit by defendants Davis and Johnson. He states that he was taken to a hospital for treatment and surgery and stayed at the hospital for three nights. The plaintiff complains that after he was returned to the institution, he was told by defendant Johnson that he was being placed on administrative segregation on orders of defendant Bell. He claims that while on administrative segregation he did not receive proper medical treatment from the institution's medical staff. A few weeks after the incident, the plaintiff was transferred from Lee to Lieber Correctional Institution. The plaintiff claims that he continues to suffer from back pain as a result of the assault.

The plaintiff alleges in his complaint that the defendants violated his constitutional rights by failing to provide for his reasonable safety, placing him in administrative segregation, transferring him to another prison, and being deliberately indifferent to his serious medical needs. He seeks compensatory and punitive damages, along with attorney fees and costs.

2

The defendants contend that the plaintiff was properly on the SMU wing and was assisting defendant Bradley and another officer in delivering lunch and thereafter collecting the used trays. Defendant Bradley states that when he had reached the cell of inmate Toryast Johnson, the food flap could not be opened with his key, and he therefore opened the cell door to receive the inmate's food tray. At that time, the inmate dodged past defendant Bradley and attacked the plaintiff, striking him in the back. Defendant Bradley immediately stopped the attack, and the plaintiff ran from the area. Subsequently, defendant Bradley noted that the inmate had an object in his hand which appeared to be a weapon, and defendant Bradley moved away from him. When he saw that the plaintiff was safe and off of the wing, he went back to the area and gave the inmate a directive to drop the object and get back into his cell, which he did. Thereafter, defendant Bradley secured the cell door. Defendant Bradley testified that had no indication or advance notice that the plaintiff would be attacked by the inmate (Bradley aff.). The plaintiff was taken to the medical unit, treated at a local hospital, and subsequently returned to the institution.

## APPLICABLE LAW AND ANALYSIS

*Plaintiff's Motion for Default*

On July 13, 2007, the plaintiff filed a motion "requesting default." In his affidavit in support of the motion, the plaintiff contends that counsel for the defendants is not authorized to practice law in the United States District Court for the District of South Carolina. Thus, he alleges that the answer filed on behalf of the defendants is void, and they are therefore in default. Defense counsel notes that he has been admitted to practice in this court since January 5, 1995, and he is currently listed on the roll of attorneys authorized to practice law before this court (def. resp. m. for default). The plaintiff also contends that defendant Bradley ran from and "flouted service on this case, thereby default should be entered against him also." A review of the docket shows that an answer was filed on behalf of all defendants on June 14, 2007, and

3

on that same date, a motion to dismiss was filed on behalf of defendant Bradley based on lack of service upon his person. On July 13, 2007, service of process was effected upon defendant Bradley, and on July 23, 2007, defendant Bradley withdrew his motion to dismiss. Based upon the foregoing, the plaintiff's motion for default is baseless and should be denied.

***Defendants' Motion for Summary Judgment***

The defendants filed a motion for summary judgment on July 30, 2007. By order filed July 30, 2007, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. The plaintiff filed his response to the motion for summary judgment on October 3, 2007.

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248. Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must provide existence of every element essential to his action which he bears the burden of adducing at a trial on the merits.

The defendants first argue that the plaintiff has failed to exhaust his administrative remedies with regard to the claims in his complaint. In response to the court's special interrogatories regarding this issue, the plaintiff stated that he was denied the opportunity to file a grievance (doc. no. 5). Accordingly, for purposes of this motion, the court will assume that the plaintiff has exhausted his administrative remedies and will address the merits of his claims.

The plaintiff alleges that the defendants failed to provide for his reasonable safety and that this failure constituted cruel and unusual punishment, violating the Eighth Amendment to the United States Constitution. Deliberate indifference to an inmate's safety needs is actionable under Section 1983. *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994) (prison

officials have duty to protect prisoners from violence "at the hands of other prisoners") (brought under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971)). *See also Benefield v. McDowall*, 241 F.3d 1267, 1271-72 (10th Cir. 2001) (inmate does not have to wait until he or she is actually assaulted before obtaining relief) (citing *Woodhous v. Virginia*, 487 F.2d 889, 890) (4th Cir. 1973)("A prisoner has a right, secured by the eighth and fourteenth amendments, to be reasonably protected from constant threat of violence and sexual assault by his fellow inmates, and he need not wait until he is actually assaulted to obtain relief."));[1] *Miltier v. Beorn*, 896 F.2d 848, 851-852 (4th Cir. 1990) ("A defendant acts recklessly by disregarding a substantial risk of danger that is either known to the defendant or which would be apparent to a reasonable person in the defendant's position.").

The Eighth Amendment expressly prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. To succeed on any Eighth Amendment claim for cruel and unusual punishment, a prisoner must prove: (1) objectively, the deprivation of a basic human need was sufficiently serious, and (2) subjectively, the prison officials acted with a "sufficiently culpable state of mind." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991); *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). "'[I]t is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock.'"

---

[1] At the time *Woodhous* was decided, inmate attacks were evaluated under a negligence standard. Although the negligence standard for Section 1983 actions was superannuated by later caselaw, *Woodhous* is still good law on the issue of inmate attacks. *See Gilland v. Owens*, 718 F. Supp. 665 (W.D. Tenn.1989). In *Gilland*, the court stated:

> *Woodhous* applies a negligence standard to the conduct of officials in protecting inmates from assault or the threat of assault. While this aspect of *Woodhous* no longer correctly represents the law in this circuit, *see McGhee v. Foltz,* 852 F.2d 876, 881 (6th Cir.1988), its holding that an inmate has a right to be free from constant threat of violence is still an accurate statement of the law.

*Gilland*, 718 F.Supp. at 686 n.13.

6

*Moore v. Winebrenner*, 927 F.2d 1312, 1316 (4th Cir. 1991) (quoting *Whitley v. Albers,* 475 U.S. 312, 319 (1986)).

In the instant case, the plaintiff claims that defendant Bradley improperly left a cell door unsecured, allowing an inmate to attack the plaintiff (comp. 3). Defendant Bradley states that the plaintiff was assisting in retrieving trays from the SMU wing. When defendant Bradley approached the door of an inmate Johnson, the lock on the food portal was fouled, so he opened the cell door to get the inmate's tray. At that point, the inmate pushed by defendant Bradley and attacked the plaintiff with a homemade weapon (Bradley aff.). Defendant Bradley immediately gained control of the assailant and stopped the attack. The plaintiff left the area and received medical attention. There is no allegation in the plaintiff's complaint that defendant Bradley had any previous knowledge of any animosity between the plaintiff and his assailant, or any knowledge that the assailant would attack the plaintiff, or anyone else (*see* comp. and Bradley aff.).

The United States Supreme Court has noted:

> [A] prison official cannot be held liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk of inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer v. Brennan*, 511 U.S. 825,   (1994).

As argued by the defendants, based on the narrative of the plaintiff's complaint, even if defendant Bradley unsecured the cell door of the inmate's cell, there is nothing to indicate a prior knowledge of danger to the plaintiff or a failure to act reasonably on the part of this defendant. While the plaintiff appears to intimate that defendant Bradley was lax in his duty to protect him, there is nothing in the complaint to indicate that the defendant had any indication that the plaintiff was in danger from the assailant. Further, the plaintiff acknowledges that

7

defendant Bradley responded to the threat presented by the inmate. As the plaintiff has failed to establish the subjective element of a failure to protect claim, this claim fails.

In his complaint, the plaintiff alleges that the defendant Bell violated his constitutional rights by placing him in administrative segregation (comp. 4). He also alleges he was wrongly transferred to another prison. *Id.* In *Hewitt v. Helms*, 459 U.S. 460, 468 (1983),[2] the United States Supreme Court stated, "Administrative segregation is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." The Supreme Court recognized in *Sandin v. Conner*, 515 U.S. 472, 480 (1995), that states may, under certain circumstances, create liberty interests that are protected by the Due Process Clause. The Court went on to state that placement in segregated confinement "did not present the type of atypical, significant deprivation in which a state might conceivable create a liberty interest." *Id.* at 486.

It is known from other cases previously decided in this judicial district that the law confers no protected liberty interest upon inmates of the SCDC from being placed in administrative segregation, in a particular prison, or in a particular section of a prison. *See*, *e.g.*, *Keeler v. Pea*, 782 F. Supp. 42, 44 (D.S.C. 1992) (citations omitted) ("An inmate has no liberty interest in remaining in the general prison population because administrative segregation is 'the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration.' Segregation is one of the conditions of confinement typically contemplated when a person receives a prison sentence; therefore, it is neither cruel and unusual, nor is it a violation of due process."). *See also Olim v. Wakinekona*, 461 U.S. 238, 245 (1983) (inmates do not have right to reside in a particular prison); *Hewitt*, 459 U.S. at 468 ("The transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence."); and *Montanye v.*

---

[2]Unrelated portions of the holding in *Hewitt v. Helms* have been superannuated by later case law.

*Haymes*, 427 U.S. 236, 242 (1976) (if a prisoner's confinement is within terms of the sentence imposed upon him and does not violate other constitutional provisions, "the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight").  It appears that the plaintiff was placed in administrative segregation on a protective custody or investigative status, as he alleges that he was released from administrative segregation as soon as he gave a statement to the investigator of the incident.  The plaintiff has failed to come forward with evidence to prove that his constitutional rights were violated when he was placed in administrative segregation for this brief amount of time, nor has he shown that his rights were violated when he was transferred to another prison.  Accordingly, this claim fails.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, this court recommends that the plaintiff's motion for default be denied.  This court further recommends that the defendants' motion for summary judgment be granted on the claims that the defendants violated his constitutional rights by failing to provide for his reasonable safety, placing him in administrative segregation, and transferring him to another prison.  However, it appears that the defendants inadvertently failed to address the plaintiff's remaining claim of deliberate indifference to his serious medical needs.  Accordingly, should the defendants wish to address this issue, they may file a supplemental motion for summary judgment on or before November 30, 2007.

s/William M. Catoe
United States Magistrate Judge

November 15, 2007

Greenville, South Carolina