IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Craig A. George, #234347, | ) |
|                         Plaintiff, | ) Civil Action No. 6:07-0574-RBH-WMC |
| vs. | ) **REPORT OF MAGISTRATE JUDGE** |
| Anthony J. Padula, Warden of Lee Correctional Institution; M. Bell, Associate Warden; Kay Hughes, Captain; NFN Davis, Sergeant; NFN Bradley, Officer; and NFN Johnson, Correctional Officer, | ) |
|                         Defendants. | ) |

This matter is before the court on the defendants' supplemental motion for summary judgment (doc. 41). In his complaint, the plaintiff, a state court prisoner proceeding *pro se,* seeks relief pursuant to Title 42, United States Code, Section 1983, alleging that his constitutional rights were violated.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the District Court.

The plaintiff names as defendants Anthony J. Padula, Warden of Lee Correctional Institution ("Lee"); Margaret Bell, Associate Warden of Lee; Major Ann Hughes, Supervisor of the Special Management Unit ("SMU") at Lee; and Sgt. Davis, Officer Alexander Bradley and Officer Johnson, all security officers in the SMU at Lee.

**FACTS PRESENTED**

The plaintiff claims that on February 22, 2005, he was assisting defendant Bradley as a food worker in the SMU at Lee. The plaintiff claims that he was assisting defendant Bradley contrary to agency policy, as he alleges that he was not allowed on the SMU wing unless authorized by an "executive." The plaintiff alleges that as he and defendant Bradley were collecting used food trays from the SMU inmates, the two approached the cell of an inmate to collect the food tray. It is the plaintiff's contention that defendant Bradley unlocked the cell door, but not the food flap, and then left the area. The plaintiff alleges that when he attempted to receive the tray, the inmate attacked him with a weapon. The plaintiff states that he was able to free himself from the attacker and run to the exit. He alleges that defendant Bradley then observed the inmate attempting to "come out of the cell a second time" and that defendant Bradley called for security assistance. The plaintiff claims that when he was out of the security tier, he went to the unit sallyport and was met by defendant Davis, who asked if he was all right. He alleges that defendant Hughes put him in a wheelchair, and he was escorted to the medical unit by defendants Davis and Johnson. He states that he was then taken to a hospital for treatment and surgery and stayed at the hospital for over a week. The plaintiff complains that after he was returned to the institution, he was told by defendant Johnson that he was being placed on administrative segregation on orders of defendant Bell. He claims that while on administrative segregation he did not receive proper medical treatment from the institution's medical staff. A few weeks after the incident, the plaintiff was transferred from Lee to Lieber Correctional Institution. The plaintiff claims that he continues to suffer from back pain as a result of the assault.

The plaintiff alleges in his complaint that the defendants violated his constitutional rights by failing to provide for his reasonable safety, placing him in administrative segregation, transferring him to another prison, and being deliberately

indifferent to his serious medical needs. He seeks compensatory and punitive damages, along with attorney fees and costs.

The defendants contend that the plaintiff was properly on the SMU wing and was assisting defendant Bradley and another officer in delivering lunch and thereafter collecting the used trays. Defendant Bradley states that when he had reached the cell of inmate Toryast Johnson, the food flap could not be opened with his key, and he therefore opened the cell door to receive the inmate's food tray. At that time, the inmate dodged past defendant Bradley and attacked the plaintiff, striking him in the back. Defendant Bradley immediately stopped the attack, and the plaintiff ran from the area. Subsequently, defendant Bradley noted that the inmate had an object in his hand which appeared to be a weapon, and defendant Bradley moved away from him. When he saw that the plaintiff was safe and off of the wing, he went back to the area and gave the inmate a directive to drop the object and get back into his cell, which he did. Thereafter, defendant Bradley secured the cell door. Defendant Bradley testified that had no indication or advance notice that the plaintiff would be attacked by the inmate (Bradley aff.). The plaintiff was taken to the medical unit, treated at a local hospital, and subsequently returned to the institution.

## **APPLICABLE LAW AND ANALYSIS**

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is

entitled to summary judgment as a matter of law.  As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant.  *Id.* at 257.  In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party.  *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).   Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist which give rise to a genuine issue.  *Id.* at 324.  Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion.  *Anderson*, 477 U.S. at 252.  Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion.  *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248.  Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must provide existence of every element essential to his action which he bears the burden of adducing at a trial on the merits.

The defendants filed a motion for summary judgment on July 30, 2007.  By order filed July 30, 2007, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975),

the plaintiff was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. The plaintiff filed his response to the motion for summary judgment on October 3, 2007. On November 15, 2007, this court recommended that the motion for summary judgment be granted on the claims that the defendants violated the plaintiff's constitutional rights by failing to provide for his reasonable safety, placing him in administrative segregation, and transferring him to another prison. However, this court noted that the defendants inadvertently failed to address the plaintiff's remaining claim of deliberate indifference to his serious medical needs. Accordingly, the defendants were allowed to file a supplemental motion for summary judgment, which they did on November 30, 2007. By order filed December 4, 2007, pursuant to *Roseboro*, 528 F.2d 309, the plaintiff was again advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the supplemental motion. On December 21, 2007, the Honorable R. Bryan Harwell, United States District Judge, adopted this court's recommendation and dismissed the plaintiff's claims that the defendants violated his constitutional rights by failing to provide for his reasonable safety, placing him in administrative segregation, and transferring him to another prison. Judge Harwell recommitted the case to this court for further proceedings on the deliberate indifference to medical needs issue. The plaintiff filed his opposition to the supplemental motion for summary judgment on February 13, 2008.

    The plaintiff alleges that after he was stabbed, he was taken the prison nurse, who had him immediately transported to the local hospital for treatment. At the hospital, x-rays revealed that his lungs had collapsed, and emergency surgery was required. The plaintiff stayed at the hospital for "a little over a week." The plaintiff complains that after he was returned to the institution, he was told by defendant Johnson that he was being placed on administrative segregation on orders of defendant Bell. He claims that while on administrative segregation he did not receive proper medical treatment from the institution's

5

medical staff. Specifically, he claims that the stitches could not be removed because of an infection that resulted because he did not receive proper medical treatment from the medical staff. A few weeks after the incident, the plaintiff was transferred from Lee to Lieber Correctional Institution. The plaintiff claims that he continues to suffer from back pain as a result of the assault (comp. 3-5; resp. to supp. m.s.j. 1).

Deliberate indifference by prison personnel to an inmate's serious illness or injury is actionable under 42 U.S.C. § 1983 as constituting cruel and unusual punishment contravening the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104-105 (1976). The government is "obligat[ed] to provide medical care for those whom it is punishing by incarceration." *Id.* at 102. This obligation arises from an inmate's complete dependence upon prison medical staff to provide essential medical services. *Id.* The duty to attend to prisoners' medical needs, however, does not presuppose "that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id.* at 105. To establish that a healthcare provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness. *See Rogers v. Evans*, 792 F.2d 1052, 1058 (5th Cir. 1986). "Deliberate indifference is a very high standard – a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999).

In order to establish that he has been subjected to cruel and unusual punishment, the plaintiff must prove that the deprivation of a basic human need was, objectively, sufficiently serious and that, subjectively, the officials acted with a sufficiently culpable state of mind. *Strickler v. Waters*, 989 F.2d 1375, 1379 (4th Cir.1993)(quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). What suffices as a serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's

attention." *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997). Courts have traditionally attempted to avoid intervening and dictating the medical care of prisoners. As noted by the Fourth Circuit, courts should "disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment. . . .[which] remains a question of sound professional judgment." *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977).

With respect to the subjective component of deliberate indifference, while an "express intent to inflict unnecessary pain is not required . . . [i]t is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the cruel and unusual punishment clause." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). Mere disagreement between an inmate and a physician over the appropriate form of treatment is not an actionable constitutional claim. *Wright v. Collins*, 766 F2d 841, 849 (4th Cir. 1975).

Clearly, the plaintiff's medical need was serious. However, as argued by the defendants, the plaintiff has not shown that any named defendant was deliberately indifferent to his serious medical need. After the plaintiff was involved in an altercation with another inmate and went to the sallyport of his unit, he states that defendant Davis asked if he was all right (comp. ¶ 16). The plaintiff contends that defendant Hughes approached him and provided a wheelchair for him, and he was immediately escorted to the medical unit by defendants Davis and Johnson (*id.* ¶¶ 18-19). Thereafter, the plaintiff was taken to a hospital to receive treatment (*id.* ¶¶ 20-23). The plaintiff next alleges that he was placed in the Administrative Segregation Unit, apparently on a protective custody status(*id.* ¶ 24). The plaintiff next complains that while he was on an administrative segregation status, he did not receive the proper medical treatment as directed by the outside physician from the "Institution Medical Staff" (*id.* ¶¶ 26, 28).

The defendants in this action are clearly security officers or administrators and not medical personnel. Accordingly, they cannot be classified as the "Institution Medical

7

Staff" that allegedly did not properly treat the plaintiff. Further, the plaintiff makes no allegation that any of the defendants named in this action had any involvement in preventing the "Institution Medical Staff" from having access to him or treating him. *See id.* p. 4. In fact, the only actions alleged by the plaintiff regarding the defendants and their reactions to his injury concern their providing immediate attention and possibly lifesaving transport of him to the medical unit (*see* comp. ¶¶ 16-19). Therefore, as argued by the defendants, it is clear that no defendant was deliberately indifferent to the plaintiff's serious medical need and, in fact, the defendants provided him with quick access to the medical unit, illustrating a complete lack of deliberate indifference.

Even if the plaintiff's allegations are read to allege that the defendant could have recognized the seriousness of his injury more quickly or taken him to the medical unit more rapidly, such an argument would only illustrate the possibility that the defendants may have been negligent. However, a claim of negligence is not actionable under 42 U.S.C. Section 1983. *Daniels v. Williams*, 474 U.S. 327, 328 (1986). The plaintiff has failed to show any evidence that the defendants acted with a sufficiently culpable state of mind. Therefore, the plaintiff's claim does not rise to the level of a constitutional infirmity and should be dismissed.

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, this court recommends that defendants' supplemental motion for summary judgment (doc. 41) be granted.

s/William M. Catoe
United States Magistrate Judge

May 12, 2008
Greenville, South Carolina